UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONNIE POULIN, Individually, and as Personal
  Representative of the estate of David Poulin,
  deceased,                        Plaintiff,

                        v.

BOSTON SCIENTIFIC CORPORATION,

                        Defendant.
_____

                                                 REPORT
                                           and
                              RECOMMENDATION

                              22-CV-553JLS(F)

APPEARANCES:         COLLINS & COLLINS P.C.
                        Attorneys for Plaintiff
                        SAMUEL JAMES CAPIZZI, of Counsel
                        267 North Street
                        Buffalo, New York  14201

                        CUNEO GILBERT & LaDUCA LLP
                        Attorneys for Plaintiff
                        CHARLES JOSEPH LaDUCA, of Counsel
                        4725 Wisconsin Avenue, NW
                        Suite 200
                        Washington, District of Columbia  20016
                               and
                        MICHAEL J. FLANNERY, of Counsel
                        300 North Tucker Boulevard
                        Suite 801
                        St. Louis, Missouri  63101

                        NELSON MULLINS RILEY & SCARBOROUGH LLP
                        Attorneys for Defendant
                        ALAN FREDERICK KAUFMAN, of Counsel
                        330 Madison Avenue
                        27th Floor
                        New York, New York  10017
                               and
                        ALANA K. BASSIN, and
                        RACHELLE V. ANDERSON, of Counsel
                        1600 Utica Avenue South
                        Suite 750
                        Minneapolis, Minnesota  55416

**JURISDICTION**

This case was referred to the undersigned by Honorable John L. Sinatra, Jr., on August 10, 2022, for all pretrial matters including preparation of a report and recommendation on dispositive motions. The matter is presently before the court on Defendant's motion to dismiss for failure to state a claim (Dkt. 4), filed July 22, 2022.

**BACKGROUND**

On June 14, 2022, Plaintiff Connie Poulin ("Plaintiff"), individually and as the personal representative of the estate of David Poulin ("Poulin"), Plaintiff's deceased husband, commenced this products liability action in New York Supreme Court, Chautauqua County ("state court"), against Defendant Boston Scientific Corporation ("Defendant"), a Delaware corporation with its corporate headquarters in Marlborough, Massachusetts. That same day, Plaintiff filed an amended complaint (Dkt. 1-1) ("Amended Complaint"). Plaintiff's claims attribute Poulin's death by cardiac arrest on June 15, 2020, to a Greenfield Vena Cava Filter ("Greenfield Filter"), manufactured by Defendant and surgically implanted in Plaintiff's right inferior vena cava on May 18, 1999. Plaintiff asserts nine claims for relief including failure to warn ("First Claim"), design defect ("Second Claim"), breach of implied warranty ("Third Claim"), breach of express warranty ("Fourth Claim"), consumer fraud and unfair and deceptive trade practices ("Fifth Claim"), wrongful death ("Sixth Claim"), loss of consortium ("Seventh Claim"), survival damages ("Eighth Claim"), and punitive damages ("Ninth Claim"). On July 15, 2022, Defendant removed the action to this court asserting diversity as the basis for jurisdiction.

2

On July 22, 2022, Defendant filed the instant motion to dismiss the Amended Complaint for failure to state a claim (Dkt. 4) ("Defendant's Motion"), supported by the attached Boston Scientific Corporation's Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) ("Defendant's Memorandum"), the Declaration of Alan F. Kaufman[, Esq.][1] in Support of Boston Scientific Corporation's Motion to Dismiss (Dkt. 4-1) ("Kaufman Declaration"), and Defendant's Exhibit 1 (Dkt. 4-2) ("Exh. 1").  On June 6, 2022, Plaintiff filed Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 12) ("Plaintiff's Response").  On September 20, 2022, Defendant filed Boston Scientific Corporation's Reply in Further Support of Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 13) ("Defendant's Reply"), attaching the Reply Declaration of Alan F. Kaufman[, Esq.] (Dkt. 13-1) ("Kaufman Reply Declaration"), and Defendant's Exh. 2 (Dkt. 13-2) ("Exh. 2").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be DENIED in part, DISMISSED as moot in part, and GRANTED in part.

## **FACTS**[2]

Defendant Boston Scientific Corporation ("Defendant"), designs, manufactures, assembles, markets, distributes and sells medical devices including, as relevant to this action, the Greenfield Inferior Vena Cava Filter ("Greenfield Filter"), a medical device implanted into a blood vessel to prevent blood clots from traveling into a patient's lungs and to maintain blood flow to the lungs.  On May 18, 1999, David Poulin ("Poulin" or "Decedent"), then 38 years old and living in Ellicottville, New York, underwent surgery at

---

[1] Unless otherwise indicated, bracketed material has been added.
[2] Taken from the Amended Complaint.

WCA Hospital (now known as "UPMC Chautauqua Hospital"), in Jamestown, New York, during which a Greenfield Filter was placed into Decedent's right inferior vena cava ("the surgery"). The Greenfield Filter is an "IVC filter that is "designed to filter blood clots (called 'thrombi') that travel from the lower portions of the body to the heart and lungs." Amended Complaint ¶ 18.[3] Following the surgery, Plaintiff was admitted for further post-operative care to the Cleveland Clinic in Cleveland, Ohio from May 20 to 29, 1999.

On June 15, 2020, Decedent, who had relocated with his family including his wife, Connie Poutin ("Plaintiff"), and son, to Beaufort, South Carolina, experienced respiratory distress at his home, and was transported by emergency medical transportation to Beaufort Memorial Hospital ("the hospital"). While in transit to the hospital, Decedent went into full cardiac arrest. CPR was initiated and continued throughout transit to the hospital, but Poulin was not revived and was pronounced dead at the hospital.

An autopsy performed on June 17, 2020 determined Poutin's cause of death was "bilateral occlusive pulmonary thrombo-emboli with contributing inferior vena cava filter thrombosis with perforation," which was further described as the Greenfield Filter "partially embedded into the vessel and focally perforating with a blood clot near totally

---

[3] According to the Amended Complaint,

The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often, these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or "PE. An IVT filter, like the Boston Scientific Greenfield IVC Filter, is designed to prevent thromboembolic events.

Amended Complaint ¶ 17.

occluding the filter." Amended Complaint ¶ 15. Plaintiff maintains the Greenfield Filter was defective and caused Poutin's death.

## DISCUSSION

### 1.    Failure to State a Claim

Defendant moves to dismiss the Amended Complaint arguing Plaintiff's claims for products liability, consumer fraud, and deceptive trade practices are not plausible, Defendant's Memorandum at 4-10, 14-15, the breach of express and implied warranty claims are untimely and inadequately pleaded, *id*. at 10-14, the dismissal of Plaintiff's claims for products liability, consumer fraud and deceptive trade practices requires dismissal of Plaintiff's derivative claims for wrongful death, survival, and loss of consortium, *id*. at 15, and Plaintiff's claim for punitive damages is not a separate cause of action and no factual allegations in the Amended Complaint support punitive damages. *Id*. at 16-17. In opposition, Plaintiff initially argues that insofar as Defendant relies on a copy of the Instructions for Use of the Greenfield Filter, a copy of which is filed as Defendant's Exh. 1 (Dkt. 4-3), Defendant fails to establish the document's authenticity, and even if Defendant can demonstrate its authenticity, the document is marked as having been revised in November 2001, such that the document was not in effect in 1999 when Plaintiff was surgically implanted with the Greenfield Filter. Plaintiff's Response at 3-4. Plaintiff further argues she has adequately pleaded claims for products liability, Defendant's Response at 4-9, breach of express warranty, *id*. at 10-13, and consumer fraud and deceptive trade practices, *id*. at 13-15, the express warranty claim is timely, *id*. at 9-10, absent the dismissal of the products liability, breach

of express warranty, and consumer fraud and deceptive trade practices claims, the derivative claims for wrongful death, survival, and loss of consortium should not be dismissed, *id*. at 15, and the punitive damages should be dismissed as a separate cause of action, but should be sustained as a remedy. *Id*. at 15-16. Plaintiff also concedes the breach of implied warranty claim is untimely. *Id*. at 9 n. 2. In further support of dismissal, Defendant submits a copy of the Instructions for Use of the Greenfield Filter in effect in 1999, stamped "Authorized" and dated December 9, 1996. Defendant's Exh. 2 (Dkt. 13-2). Defendant also argues the Amended Complaint lacks the required factual specificity to allege claims for products liability, Defendant's Reply at 1-7, and consumer fraud and deceptive trade practice, *id*. at 8-9, and Plaintiff's breach of express warranty claim is both untimely, *id*. at 7, and inadequately pleaded. *Id*. at 7-8. Defendant also observes Plaintiff has conceded its request for punitive damages is not recognized as a separate cause of action and thus should be dismissed. *Id*. at 9.

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint.  *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  Simply put, unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at 570.

## 2.    Disregarding Instructions for Use

Preliminarily, the court addresses Plaintiff's argument, Plaintiff's Response at 3-4, that the copy of the Instructions for Use, revised in 2001, Defendant's Exh. 1 (Dkt. 4-3) ("2001 Instructions"), which Defendant submitted in support of dismissal should be disregarded because Defendant's counsel is not a signatory to the 2001 Instructions,

provides no basis for testifying to whether the document is a true and accurate copy of the 2001 Instruction, and the 2001 Instructions were not in effect in 1999 when Plaintiff was surgically implanted with the Greenfield Filter.  In opposition, Defendant submits the Kaufman Reply Declaration attaching "a true and correct copy of the Instructions for Use for the [Greenfield Filter], date stamped 'Authorized' December 9, 1996."  Kaufman Reply Declaration ¶ 3, and Exh. 2 (Dkt. 13-2) ("1997 Instructions").[4]  According to Defendant, although Plaintiff's asserts Defendant failed to establish the authenticity of the 2001 Instructions, Plaintiff does not actually dispute their authenticity, Defendant's Reply at 5, and the 1997 Instructions submitted in further support of dismissal contain the "same exact language" warning of both perforation of the vena cava and migration of the Greenfield Filter as found in the 2001 Instructions.  *Id*. at 5-6.

Generally, on a motion to dismiss, matters outside the complaint are not considered unless the motion is converted to one for summary judgment with notice to the parties and a reasonable opportunity to present all material pertinent to such motion under Fed.R.Civ.P. 56.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'"  *Carione v. United States,* 368 F.Supp.2d 186,

---

[4] Consistent with Defendant, Defendant's Reply at 6, the court refers to the earlier Instructions for Use as the "1997 Instructions."

191 (E.D.N.Y. 2005) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1366 (3d ed. 2004)).  A district court may not, however, "convert a motion under Fed. R. Civ. P. 12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to an opposing party and an opportunity for that party to respond."  *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).  Conversion to summary judgment is not, however, required where a document is "integral" to the complaint and so long as there is no dispute regarding the document's authenticity or accuracy.  *Id*. (citing cases).

A document is "integral to the complaint" where the complaint "relies heavily upon its terms and effect . . ."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (quotations omitted).  "A 'necessary prerequisite' for taking into account materials extraneous to the complaint 'is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'"  *Nicosia*, 834 F.3d at 231 (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)) (further quotation omitted; italics in original).  "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'"  *Id*. (quoting *Global Networks Communications, Inc.*, 458 F.3d at 157).

Nevertheless, "[e]ven where a document is considered 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"  *Nicosia*, 834 F.3d at 231 (quoting *DiFolco v. MSNBC*

*Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), (further quotation omitted).  Nor may

there be any disputed issues of material fact as to the document's relevance, *id*. (citing

*Faulkner*, 463 F.3d at 134), because of "concern that a plaintiff may lack notice that the

material will be considered to resolve factual matters."  *Id*. (citing *Cortec Indus., Inc. v.*

*Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

   "[T]he requirement that there be no dispute about the authenticity of documents

integral to the complaint has been interpreted strictly: even implicit, conclusory,

contradictory, or implausible objections to the authenticity or accuracy of a document

render consideration impermissible." *Mbody Minimally Invasive Surgery, P.C.* v. *United*

*Healthcare Ins. Co.*, 2016 WL 4382709, at *7 (S.D.N.Y. Aug. 16, 2016) (internal

quotation marks and citation omitted); *see also Savides* v. *United Healthcare Servs.,*

*Inc.*, 2019 WL 1173008, at *2 (S.D.N.Y. Mar. 13, 2019) (denying defendant's motion to

dismiss because court could not consider insurance plan due to authenticity dispute,

and plan's terms formed entire basis of motion); *Barberan* v. *Nationpoint*, 706 F. Supp.

2d 408, 416 n. 4 (S.D.N.Y. 2010) ("[W]hile Plaintiffs' attempt to slalom their way through

these documents may not be well-founded, and while Plaintiffs may face a rocky road in

thwarting Defendants' inevitable summary judgment motion, the Court will apply

[Second Circuit precedent] and decline to consider these documents at this time.").  In

short, if the authenticity of a document on which the defendant relies in moving to

dismiss is disputed, "the district court may not dismiss the complaint with those

materials in mind."  *Nicosia*, 834 F.3d at 231 (citing *Chambers*, 282 F.3d at 154).

   In the instant case, Plaintiff's dispute of the authenticity of the Instructions for Use

submitted by Defendant precludes both the undersigned's consideration of the

document in analyzing Defendant's Motion, and also renders unnecessary any

consideration of whether to convert Defendant's Motion into one for summary judgment.

*Nicosia*, 834 F.3d at 231.  Accordingly, neither the 1997 or 2001 Instructions for Use will

be considered.[5]

### 3.    Claims

#### A.    Products Liability

Under New York law, a manufacturer who places into the stream of commerce a

defective product which causes injury may be held strictly liable.  *Amatulli v. Delhi*

*Construction Corp.*, 571 N.E.2d 645, 648 (N.Y. 1991) (citing *Codling v. Paglia*, 298

N.E.2d 622, 628 (N.Y. 1973)).  A product defect "may consist of a mistake in

manufacturing, an improper design or the inadequacy or absence of warnings for the

use of the product."  *Id.* (citing *Codling*, 298 N.E.2d at 628 (manufacturing); *Micallef v.*

*Miehle Co.*, 348 N.E.2d 571, 577 (N.Y. 1976) (design); *Torrogrossa v. Towmotor Co.*,

376 N.E.2d 920, 921 (N.Y. 1978) (warnings)).  "For there to be a recovery for injuries or

damages occasioned by a defective product, however, that defect must have been a

substantial factor in bringing about the injury or damage and additionally, among other

things, at the time of the occurrence, the product must have been used for the purpose

and in the manner normally intended or in a manner reasonably foreseeable."  *Amatulli*,

571 N.E.2d at 649 (citing *Codling*, 298 N.E.2d at 628).   In the instant case, Plaintiff

alleges the Greenfield Filter was defective because it was improperly designed and

---

[5] The court notes that although the surgery during which the Greenfield Filter was surgically implanted in Plaintiff occurred in 1999, neither Plaintiff nor Defendant addresses the possibility that yet another version of the Instructions for Use may have been in effect at the time of the surgery.

Defendant failed to adequately warn of the dangers associated with the Greenfield Filter.

### 1.     Failure to Warn

Plaintiff's First Claim alleges Defendant failed to adequately warn of the risks associated with the use of the Greenfield Filter, including the risk of migration from the implantation site, perforation of blood vessel walls, and causing blood clots, resulting in an unreasonably dangerous and defective condition of the Greenfield Filter including, relevant to Plaintiff, the tendency of the Filter to migrate and perforate and embed in the wall of the vena cava. Defendant argues in support of dismissal that Plaintiff fails to identify any inadequate warnings, Defendant's Memorandum at 8-10, or to allege causation. *Id*. at 10. In support of dismissal, Defendant relies on the Instructions for Use which Defendant maintains contain explicit warnings about the Greenfield Filter relevant to Decedent's claimed injury including the formation of blood clots in the Filter that could completely block blood flow through the vena cava, perforation of the vena cava, adjacent blood vessels, or organs by one or more hooks on the Filter, and thrombosis at the Filter's insertion site. Defendant's Memorandum at 8-9 (citing 2001 Instructions for Use, Defendant's Exh. 1 at 8). Because, as discussed above, Discussion, *supra*, at 7-11, the court finds Plaintiff's challenge to the authenticity of the Instructions for Use precludes the court from considering such document, the court also cannot further consider this argument, but instead considers only Defendant's alternative argument that Plaintiff has failed to plead how any explicit warning was inadequate or insufficient, *id*. at 9-10, as well as causation. In opposition, Plaintiff argues the Amended Complaint's allegations that Defendant failed to adequately warn

about the dangers associated with the Greenfield Filter, including "the risk of migration from its implantation site, perforation of the vessel walls, and causing blood clots, all resulting in the unreasonably dangerous and defective condition of the [Greenfield Filter]," Amended Complaint ¶ 23, and "that a person might suffer personal injury as a result of the implantation due to, among other things, the tendency of filter to migrate and/or perforate and/or embed in the wall of the vena cava," *id*. ¶ 24, as well as Defendant's failure to warn about possible death due to migration of the Filter, sufficiently states a plausible claim for failure to warn.  Plaintiff's Response at 8-9.  In further support of dismissal, Defendant maintains Plaintiff's failure to specifically allege how the warning was insufficient is fatal to the claim.  Defendant's Reply at 6-7.

To prevail on a failure to warn claim, a plaintiff must prove that "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm."  *State Farm Fire & Cas. Co. v. Nutone, Inc.,* 426 Fed.Appx. 8, 10 (2d Cir.2011) (citing *Liriano v. Hobart Corp.,* 700 N.E.2d 303, 305 (N.Y. 1998)).  To satisfy these elements, a plaintiff must "prove that the product did not contain adequate warnings."  *Mulhall v. Hannafin,* 841 N.Y.S.2d 282, 285 (1st Dep't 2007).  Thus, "a failure to warn cause of action is appropriately dismissed if a plaintiff does not plead facts indicating <u>how</u> the provided warnings were inadequate."  *Reed,* 839 F.Supp.2d at 575 (citation omitted) (underlining added).  Thus, courts within the Second Circuit have construed these elements, in the context of a Rule 12(b)(6) motion asserting a failure to warn claim under New York law, as requiring, to satisfy Twombly's plausibility standard, that the plaintiff plead facts sufficient to indicate <u>how</u> the provided

warnings were inadequate. *See*, *e.g.*, *Black v. Covidien, PLC*, 2018 WL 573569, at * 3 (W.D.N.Y. Jan. 26, 2018) (declining to dismiss under Rule 12(b)(6) the plaintiff's failure to warn claim re-asserted in an amended complaint and identifying what specific warnings that related to the plaintiff's asserted injuries the defendant failed to disclose to the plaintiff and her physician), *Reed*, 839 F.Supp.2d at 575 (dismissing plaintiff's failure to warn claim under New York law for failing to state a claim because the complaint did not "allege facts identifying how the provided warnings were inadequate." (citing, *inter alia*, *Bailey v. Janssen Pharmaceutica, Inc.,* 288 Fed.Appx. 597, 608–09 (11th Cir.2008) (affirming the dismissal of a failure to warn claim when the complaint "only assert[ed] that the warning was insufficient because it failed to warn of various dangers of the use of [the drug], without explaining either the information available to [the] physician at the time of the administration of the drug or how the contents of the label were inadequate")), and at 576 n. 5 (citing *Twombley*, 550 U.S. at 557).[6]

    Nevertheless, as relevant to the instant case, Plaintiff alleges not the inadequacy of a specific warning but, rather, the *absence* of any warning that the Greenfield Filter might migrate from its implantation site and embed in the vena cava, causing thrombosis and blood flow blockage that could result in death.  Under these circumstances, Plaintiff is not required to identify how the missing warning was inadequate.  *See Richards v. Johnson & Johnson*, 2018 WL 2976002, at * 4 (N.D.N.Y. June 12, 2008) (denying motion to dismiss failure to warn claim as insufficiently pleaded

---

[6] To date, this issue has not been addressed by the Second Circuit Court of Appeals.  *See Gioia v. Janssen Pharmaceuticals*, 2021 WL 5447330, at * 2 (E.D.N.Y. Nov. 22, 2021) (dismissing amended complaint "because the amended allegations, like the original allegations, do not identify what warnings were provided to plaintiff's physician or how the provided warnings were inadequate), *appeal docketed*, No. 22-52  (2d Cir. Jan. 10, 2022).

for failing to allege how a specific warning was inadequate where the plaintiff alleged there was no warning). Moreover, at this stage of litigation, given Plaintiff's allegation that there was no warning, Plaintiff's assertion that Decedent's autopsy reported the Greenfield Filter perforated the vena cava with a blood clot nearly totally occluding the Filter, Amended Complaint ¶ 15, sufficiently alleges the causation element of a failure to warn claim. *See Richards*, 2018 WL 2976002, at * 5 (finding because the defendant manufacturer of an IVC filter knew or should have known when the filter was distributed and implanted into the plaintiff of the risk of migration, it was plausible that the defendant should have warned about such risk).

Defendant's Motion should thus be DENIED as to the First Claim alleging product liability based on a failure to warn.

2.    **Design Defect**

In the Second Claim, Plaintiff alleges the Greenfield Filter was defectively designed. In support of dismissal of the Second Claim, Defendant argues Plaintiff merely recites in conclusory terms the elements of a design defect claim, and fails to identify any actual defect in the Greenfield Filter, the existence of a plausible alternative and safer design, and that the design defect caused the Decedent's injuries. Defendant's Memorandum at 4-8. In opposition, Plaintiff argues the factual allegations sufficiently allege the Greenfield Filter was defectively designed, Plaintiff's Response at 4-5, a feasible alternative for the product was available, *id*. at 5, and that Decedent's death was caused by the Greenfield Filter's defective design. *Id*. In further support of dismissal, Defendant maintains Plaintiff's failure to identify how the Greenfield Filter was defective, rather than simply reciting the elements of such claim, requires dismissal of

the design defect claim, Defendant's Reply at 1-3, and Plaintiff has not met the

defective design pleading standard without identifying an alternative design, *id*. at 3-4,

or alleging facts showing the Greenfield Filter caused Decedent's injuries and death. *Id*.

at 4-5.

"In order to establish a prima facie case in strict products liability for design

defects, the plaintiff must show that the manufacturer breached its duty to market safe

products when it marketed a product designed so that it was not reasonably safe and

that the defective design was a substantial factor in causing plaintiff's injury." *Voss v.*

*Black & Decker Mfg. Co.*, 450 N.E.2d 204, 208 (N.Y. 1983). To state a claim for

defective design claim, a plaintiff must allege that (1) the product as designed posed a

substantial likelihood of harm; (2) a safer design for the product was feasible; and (3)

the defectively designed product was the proximate cause of the plaintiff's injury. *Voss*,

450 N.E.2d at 208-09.

In the instant case, with regard to the first element, Plaintiff alleges the Greenfield

Filter was defectively designed and was unreasonably dangerous because it was not

reasonably fit, suitable, or safe or its intended purpose and the foreseeable risks of the

Greenfield Filter exceeded the benefits associated with its design. Amended Complaint,

Second Claim. These conclusory allegations, however, fail to specify the particular

defect in the Greenfield Filter, requiring dismissal of the claim. Significantly, without

identifying a product's specific defect, it is not sufficient to plead that the risks of using

the product outweigh its benefits, *see Goldin v. Smith & Nephew, Inc.*, 2013 WL

1759575, at * 4 (S.D.N.Y. Apr. 24, 2013) (merely alleging that component of medical

device used in total hip replacement surgery had a "propensity to dislocate" without

identifying the particular problem with the product's design is insufficient to state a design defect claim); *Reed v. Pfizer, Inc.*, 839 F.Supp.2d at 577-78 (pleading only that drug was defective without pleading facts identifying the drug's design defect is insufficient). Accordingly, Plaintiff has failed to adequately allege the Greenfield Filter, as designed, posed a substantial likelihood of harm.

Relevant to the second element requiring a that safer alternative design was feasible, Plaintiff merely alleges the danger of the Greenfield Filter's asserted defective design "poses a risk of serious vascular and other serious injury which could have been reduced or avoided, *inter alia*, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products." Amended Complaint ¶ 34. Plaintiff's burden of alleging a safer alternative design was feasible cannot be satisfied simply by proposing that an entirely different product, *i.e.*, of a different design, could have been used. *See Simon v. Smith & Nephew, Inc.,* 990 F.Supp.2d 395, 405 (S.D.N.Y.2013) (holding that "an allegation that [defendant] could have manufactured a different product altogether, or that others have done so, does not itself make out a plausible claim of design defect"). Nor does merely referencing, without identifying, an alternative design that would have prevented the plaintiff's injuries satisfy the second element. *See Pinello v. Andreas Stihl AG & Co. KG,* 2011 WL 1302223, at *15 (N.D.N.Y. Mar. 31, 2011) (failing to reference any alternative design that would be feasible, and safer, and likely would have prevented the plaintiff's injuries falls short of establishing the second element for a design defect claim). Likewise, here, Plaintiff fails to plead an alternative design that would have avoided Decedent's injuries and death thus requiring the Second Claim be dismissed.

As for the third element requiring causation, Plaintiff alleges that Plaintiff and Decedent were injured "[a]s a direct and proximate result" of the Greenfield Filter's defects.  Amended Complaint ¶ 43.  The Amended Complaint, however, is devoid of any factual allegations plausibly attributing the Decedent's death to the unspecified defect with the Greenfield Filter.  In particular, a "generic statement of causation [that] does not explain *how* the [medical device's] defective design proximately caused [the Plaintiff's] specific injuries" fails to plausibly allege causation.  *Green v. Covidien*, 2021 WL 1198833, at * 5 (S.D.N.Y. Mar. 30, 2021) (italics added).  In *Quintana v. B. Braun Medical Inc*., 2018 WL 3559091, at * 4 (S.D.N.Y. July 24, 2018), which is factually similar to the instant case, the court dismissed for failing to state a claim a medical device products liability claim for defective design asserted by a plaintiff who, after being hospitalized for treatment of a pulmonary embolism and DVT, was implanted with a filter, designed and manufactured by the defendant, that was intended to prevent further pulmonary embolism and DVT, yet subsequently had a stroke.  The court found the plaintiff's assertion of causation, *i.e.*, that after the surgical implantation of the filter which was supposed to prevent further pulmonary embolism and DVT, the plaintiff was hospitalized for a stroke and diagnosed with a pulmonary embolism, the device must have failed, was "plainly inadequate" because it failed to "identify any actual defect in the device . . . ."  *Id*.  Here, Plaintiff similarly failed to identify any actual defect in the device, such that Plaintiff cannot plausibly allege causation.

In short, the claim must be dismissed where, as here, the Amended Complaint contains "only the sort of '[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements,' that the Supreme Court has made clear is

insufficient to survive a motion to dismiss."  *Rincon v. Covidien*, 2017 WL 2242969, at *

1 (S.D.N.Y. May 22, 2017) (granting motion to dismiss medical device products liability

claim predicated on injuries the plaintiff allegedly sustained from hernia repair surgery

involving the use of mesh where the complaint contained no allegations from which it

could be construed that the use of the mesh was the "but for" cause of the plaintiff's

later injuries (citing *Iqbal*, 556 U.S. at 678)).

Plaintiff's Second Claim for defective design should be DISMISSED.

**B.    Breach of Warranty**

Plaintiff's Third and Fourth Claims assert, respectively, breach of implied and

express warranty.  Complaint, Third Claim (implied warrant), Fourth Claim (express

warranty).  Defendant argues both claims should be dismissed as untimely because the

breach of warranty claims applicable under New York law is four years which accrues

upon delivery of the warranted product and not from the date of injury, Defendant's

Memorandum at 10-11, and that both claims are inadequately pleaded.  *Id*. at 11-13

(express warranty), 13-14 (implied warranty).

**1.    Implied Warranty**

In opposition to Defendant's Motion, Plaintiff concedes the Third Claim alleging

breach of implied warranty is untimely.  Plaintiff's Response at 9 n. 2.  Defendant's

Motion should thus be GRANTED as to Plaintiff's Third Claim alleging breach of implied

warrant.

**2.    Express Warranty**

In addition to arguing in support of dismissal of Plaintiff's Fourth Claim, that the

claim is time-barred, Defendant's Memorandum at 10-11, Defendant also maintains the

claim is inadequately pleaded because Plaintiff has failed to allege the elements of a claim for breach of express warranty. *Id*. at 11-13. In opposition to dismissal, Plaintiff argues the claim is timely because the express warranty explicitly extends to future performance,[7] Plaintiff's Response at 9-10, and that Decedent relied on express representations in Defendant's marketing materials in deciding to purchase the Greenfield Filter, which was not in a merchantable condition and caused Plaintiff's and and Decedent's injuries. *Id*. at 10-13. In further support of dismissal, Defendant repeats that the claim is time-barred, Defendant's Reply at 7, and, in any event, that Plaintiff's "vague reference to 'marketing materials'" does not support a claim for breach of express warranty. *Id*. at 7-8.

Pursuant to New York's Uniform Commercial Code, "[a]n action for breach of any contact for sale must be commenced within four years after the cause of action has accrued," N.Y. U.C.C. § 2-725(1), and "a breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." N.Y. U.C.C. § 2-725(2). Accordingly, assuming, *arguendo*, there was a breach of an express warranty, Plaintiff's Fourth Claim for breach of express warranty accrued with the discovery of the alleged breach of the warranty with Decedent's cardiac arrest in 2020 and, as such, is not time-barred. Nevertheless, the Amended Complaint fails to adequately allege the existence of the requisite express warranty.

---

[7] The court notes that "the future performance exception [to the four-year limitations period] does not apply to . . . implied warranty claims." *Orlando v. Novurania of America, Inc*., 162 F.Supp.2d 220, 224 (S.D.N.Y. 2001) ("The [future performance] exception speaks to express warranties not implied warranties.").

"Under New York law, an express warranty is created by, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods" or "any description of the goods" and is "part of the basis of the bargain."  N.Y. U.C.C. § 2–313 ("§ 2-213").  Although the seller need not use formal words such as "warrant" or "guarantee," nor have the specific intention to make a warranty, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  *Id*.  Further, to state a claim for breach of express warranty, the plaintiff must allege that it relied upon the warranty to its detriment.  *Weiner v. Snapple Beverage Corp.,* 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011).

In the instant case, Plaintiff alleges that the statements on which Decedent relied for the asserted express warranty were found in Defendant's "marketing materials," Amended Complaint ¶ 53, which is simply insufficient to support a breach of express warranty claim.  *See Kennedy v. Covidien, LP*, 2019 WL 1429979, at *6 (S.D.N.Y. Mar. 29, 2019) (the plaintiff's "characterization of Defendant's marketing material as generally implying that PCOx Mesh was "safe and effective" does not identify any specific actionable conduct or statement on behalf of Defendant" to establish a breach of express warranty claim (citing *Viania v. Zimmer, Inc.*, 2017 WL 5714725, at *5 (E.D.N.Y. Nov. 27, 2017) (dismissing an express warranty claim where plaintiff did not allege where or to whom the purported "safe and effective" warranty was directed))).

Accordingly, Defendant's Motion should be GRANTED as to Plaintiff's Fourth Claim for breach of express warranty.

### C.    Consumer Fraud and Deceptive Trade Practice

Plaintiff's Fifth Claim alleges consumer fraud and unfair deceptive trade practices in violation of New York General Business Law § 349 ("§ 349").  Amended Complaint, Fifth Claim.  In support of its motion to dismiss, Defendant argues that Plaintiff has failed to allege anything other than the bare elements of a § 349 claim, requiring dismissal.[8]  Defendant's Memorandum at 14-15.  In opposition, Plaintiff maintain that § 349 claims "'are not subject to the pleading-with-particularity requirements of Rule 9(b) . . . and need only meet the bare-bones notice-pleadings requirements of [F.R.C.P.] 8(a)," Plaintiff's Response at 13 (quoting *Williamson v. Stryker Corp.*, 2013 WL 3833081, at * 4 (S.D.N.Y. July 3, 2013)), asserting the allegations of the Amended Complaint sufficiently plead the elements of a § 349 claim.  *Id*. at 14-15.  In further support of dismissal, Defendant reiterates that Plaintiff's § 349 claim is "wholly conclusory and lacks supporting allegations."  Defendant's Reply at 8-9.

Section 349 makes unlawful "'[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting N.Y. Gen. Bus. Law §349).  To state a claim for deceptive practices under § 349, a plaintiff must allege that the act, practice or advertisement (1) was consumer-oriented, (2) was materially misleading, and (3) resulted in injury to the plaintiff.  *Pelman v. McDonald's Corp.,* 237 F.Supp.2d 512, 525 (S.D.N.Y.2003).  "To be 'materially misleading," conduct must be 'likely to

---

[8]  The court notes that although the Amended Complaint refers only to N.Y. Gen. Bus. Law § 349, Amended Complaint ¶ 66, Defendant also argues Plaintiff has failed to allege a claim pursuant to N.Y. Gen. Bus. Law § 350 ("§ 350")prohibiting "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any services in the state."  Defendant's Memorandum at 14-15.  Because Plaintiff does not mention § 350 either in the Amended Complaint or in responding in opposition to dismissal, the court does not consider the adequacy of Plaintiff's Fifth Claim under § 350.

mislead a reasonable consumer acting reasonably under the circumstances.'" *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 516 (S.D.N.Y. 2018) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1990)).  "[W]hile the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oswego Laborers' Loc. 214 Pension Fund*, 647 N.E.2d at 745.  "A pleading is insufficient if it does not include facts illustrating 'a causal connection between some injury to plaintiffs and some misrepresentation by defendants.'" *Id*. (quoting *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 604 (1st Dep't 1998), *aff'd*, 720 N.E.2d 892 (1999)).

In the instant case, with regard to the first element of a § 349 claim, "[t]he standard for establishing consumer-oriented conduct is very liberal, and where a defendant deals with a plaintiff in the same way as it would deal with any other customer, such conduct is considered 'consumer-oriented.'" *Williamson v. Stryker Corp.*, 2013 WL 3833081, at *14 (S.D.N.Y. July 23, 2013) (citing *Oswego Laborers' Local 214 Pension Fund,* 647 N.E.2d at 744).  "[T]he injury must be to the public generally as distinguished from the plaintiff alone." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64-65 (2d Cir. 2010) (citation omitted).  In the instant case, the allegations in the Amended Complaint fall short of alleging Defendant's marketing of the Greenfield Filter engaged in consumer-oriented conduct because there are no allegations, even broadly construed, showing Defendant engaged in any conduct having "a broader impact on consumers at large." *Mahoney v. Endo Health Solutions, Inc*., 2016 WL

3951185, at * 9 (S.D.N.Y. July 20, 2016).  Rather, Plaintiff solely claims that Defendant misrepresented the Greenfield Filter's "alleged benefits and characteristics," "suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects" of the Greenfield Filter, misrepresented the quality and efficacy of the Filter, and misrepresented and advertised the Filters "were of a particular standard, quality or grade," Amended Complaint ¶ 61, yet there are no allegations that such varied misrepresentations were directed to consumers including physicians and their patients.  *See, cf., Mahoney*, 2016 WL 3951185, at * 9 (finding labels and inserts directed toward pharmacists and consumers and accompanying multivitamins incorrectly stating the multivitamins provided a specific amount of certain supplements, was consumer-oriented conduct).  Although courts have found allegations similar to those asserted in the Amended Complaint sufficiently allege the second element, *i.e.*, materially misleading conduct, *see Tears*, 344 F.Supp.3d at 516 (alleging consumers would rely on the defendant's statements of "misrepresentation and concealment of material facts" alleged materially misleading conduct), Plaintiff nevertheless has failed to allege reliance on such materially misleading conduct and the failure of the Greenfield Filter.  *See Orlander*, 802 F.3d at 302 (there must be a causal "connection between the misrepresentation and some harm from, or failure of, the product.").

Defendant's Motion should therefore be GRANTED as to Plaintiff's Fifth Claim alleging a violation of § 349.

### D.    Derivative Claims

Defendant argues that because Plaintiff's Sixth, Seventh, and Eighth Claims for, respectively, wrongful death, loss of consortium, and survival damages are derivative of

Plaintiff's primary claims for product liability, breach of warranty, and deceptive trade practices claims, the dismissal of such primary claims requires dismissal of the derivative claims.  Defendant's Memorandum at 15.  In opposition, Plaintiff argues that inasmuch as Plaintiff's primary claims are not dismissed, Plaintiff's derivative claims should not be dismissed.  Plaintiff's Response at 15.  Defendant did not reply in further support of this argument.

The parties do not dispute that Plaintiff's Sixth, Seventh, and Eighth Claims are derivative of Plaintiff's primary claims.  "Under New York law, a claim for loss of companionship, society, services, or support is derivative of the related primary causes of action; dismissal of the primary claims requires the Court to dismiss any dependent derivative claims."  *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008).  Assuming the District Judge agrees with the undersigned's recommendation that Plaintiff's First Claim, *i.e.*, a primary claim alleging a failure to warn, should not be dismissed for failure to state a claim, it follows that Plaintiff's derivative claims also should not be dismissed.  Alternatively, the dismissal of all of Plaintiff's primary claims would necessarily require dismissal of the derivative claims.

Defendant's Motion should be DENIED as to the dismissal of Plaintiff's derivative claims provided at least one of Plaintiff's primary claims survives dismissal.

### E.    Punitive Damages

As her Ninth Claim, Plaintiff seeks punitive damages.  Amended Complaint, Ninth Claim.  In support of dismissal, Defendant argues a stand-alone claim for punitive damages is not recognized under New York law but instead is a type of damages that can be recovered if Plaintiff prevails on certain claims.  Defendant's Memorandum at 16.

Alternatively, Defendant argues the claim for punitive damages is implausible because the Amended Complaint is devoid of factual allegations demonstrating the requisite "'high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Id*. at 16-17 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 725 F.3d 65, 127 (2d Cir. 2013)). Plaintiff concedes punitive damages are a type of remedy, rather than a separate cause of action, and agrees to dismiss the Ninth Claim insofar as it is presented as a claim, Plaintiff's Response at 15, but opposes as premature the dismissal at the pleading stage of the request for punitive damages. *Id*. at 15-16. In reply, Defendant requests the court recognize that Plaintiff agrees punitive damages are not a separate cause of action. Defendant's Reply at 9.

"'It is well established in New York law that punitive damages are a remedy and not a separate cause of action for pleading purposes.'" *Doe v. AR*, 2022 WL 1624081, at *18 (W.D.N.Y. May 23, 2022) (quoting *Tears*, 344 F. Supp. 3d at 517 (citation & internal quotation marks omitted)). "'[A] demand for punitive damages is more properly characterized as a request for relief, rather than as an independent claim, such that dismissal at the pleading stage is inappropriate.'" *Horowitz v. Spark Energy, Inc.*, 2020 WL 6561600, at *1 (S.D.N.Y. July 31, 2020). Whether a court should permit a plaintiff to pursue any particular remedy, including punitive damages, "is most appropriately raised in a pretrial motion *in limine*." *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 517 F. Supp. 2d 662, 666-667 (S.D.N.Y. 2007). *See Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 244 (W.D.N.Y. 2003) ("I find that the request to

dismiss the punitive damages claim may properly be brought as a pretrial motion *in limine*.").

In the instant case, Defendant's Motion is DISMISSED as moot to the extent Defendant seeks to dismiss the Ninth Claim.  Further, as the parties are at the pleading stage and discovery has yet to occur, construing Defendant's Motion as seeking dismissal of Plaintiff's request for punitive damages, Defendant's Motion should be DENIED as premature.

**4.    Leave to Replead**

Dismissal of a plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, unless the complaint's deficiencies are substantive and cannot be cured by further pleading.  *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).  Here, with the exception of the Third Claim alleging breach of implied warranty, and the Ninth Claim asserting punitive damages, both claims which Plaintiff has voluntarily withdrawn, and the Sixth Seventh, and Eighth claims derivative of at least Plaitniff's First Claim for failure to warn, the problems with Plaintiff's remaining claims, *i.e.*, the Second, Fourth, and Fifth Claims, are not substantive but may be cured by further pleading.  Accordingly, the dismissal of Plaintiff's Second, Fourth, and Fifth Claims should be without prejudice and with leave to replead.

**<u>CONCLUSION</u>**

Based on the foregoing, Defendant's Motion should be DENIED in part as to the First, Sixth, Seventh, and Eighth Claims, DISMISSED as moot in part as to the Third

and Ninth Claims, and GRANTED in part as to the Second, Fourth, and Fifth Claims which should be DISMISSED without prejudice and with leave to replead.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 9th, 2022
                Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      December 9th, 2022
            Buffalo, New York